Hi, would you approach the bench and tell us who you are and who you represent, please? My name is Jerome Kaplan and I represent Jill Vaughn. Good morning. My name is Kathleen Pasolka-Brown and I represent Blue Cross Blue Shield of Illinois. I think if you could keep your voice up, we're getting older and we can't hear. That does not magnify voices, it just records, and so the people in the court will want to hear what you say. Each of you have 15 minutes to speak to your side of the appeal, and we're assuming you'd like to reserve some time for rebuttal. Is that fair? You'd like to reserve some time for rebuttal? Great, you may. There are basically no disputed issues of fact in this case, and I submit that it's an issue of law, the interpretation of a statute, particularly the Income for Withholding for Support Act. I don't think I have to summarize the sequence of events that arose to this. There was an order of support, a uniform order, there was an order of withholding, there were two letters which are really significant that they replied to. We filed a separate action against Blue Cross and Blue Shield. They filed a 2619-9 motion, and that was granted, a motion to reconsider, and then this appeal followed. The Income Withholding Act is one of several statutes adopted by the legislature which were designed to ensure that a custodial parent will receive court order support. There are other examples like the Guidelines Support and the 503G Trust. Basically, you just have to look at the definitions of the statute which provide the definition of the terms used. This is not a situation where we even have to go to the ordinary English language. The statutes themselves provide specific definitions of each term used, and they have used the broadest possible definition that's imaginable to create every scenario that could occur. 2835 provides the duty of a payer, 2815F defines obligee, 15G payer, but the significant part is 15D which says defines income, and income means any form of periodic payment to an individual regardless of source, including but not limited to wages, salary, commissions, compensation as an independent contractor, workers' compensation, disability, annuity, pension and retirement benefits, lottery prizes and awards, and most important, insurance proceeds, vacation payments, bonuses, profit sharing payments, interest and other payments made by any person, private entity, federal or state government, any movement of local government, school district, or any created by public act. Obviously, the money that was due from Blue Cross and Blue Shield to Dr. Vaughan came in one or more of those categories, and therefore, when the notice to withhold income was served, they wrote two letters, basically, the May letter which said the same thing, it looked like it was a form letter, it's typically like an insurance denial of claim letter. It didn't say we don't provide this service. We don't provide this service. They felt that they, I think if you take a look at that meaning of that language, we can opt out of the statute. That's what they're saying, we can opt out of the statute. Well, aren't they really saying, look, this is not, first of all, it's not a department, okay, but secondly, it's not income. I'm assuming they're going to get a concession, this is reimbursement, because they're an insurer for a sick person. I mean, they don't have any relationship to the doctor in terms of anything other than reimbursing the doctor for what the service is the doctor provided to. They're insured. So, the doctor doesn't work for them. Absolutely, but it doesn't. In their assessment, what they pay that doctor is not, it could be income to him, but they don't have a relationship with that doctor other than the sick person walking in the door. So, you know, it's really like a third party beneficiary type of situation. But the statute. The statute wasn't intended to do that. The statute was intended to put an income stop on somebody's employer. They're not the doctor's employer, that's what they're saying. In simple terms, the statute says income means more than income, and that's what they're defining in the statute. Can you find a case that's similar to this one? No, there's no case. If you go to the cases, when we go to one of the other topics where you talk about innocent excuse and, you know, willful failure, and I think this is a willful situation. To comply, and that's the essence of the case. They go into the other issue that they raise, and that's after they said it wasn't income, is that we're paying it to a different entity other than Dr. Vaughn. The Vaughn Center. The Vaughn Center, and he pays the salary from the Vaughn Center. But there is no legal entity known as the Vaughn Center, is there? There is no legal entity. There is no separate legal entity, that's where he chose to do that. Can I jump into something with you, because it's important? The trial judge said they may have believed that they were paying it to a corporation or to a service corporation or whatever, and therefore the judge said, so I'm going to let them off the hook entirely, basically, is what the judge, as I read what he said. What I'm asking, yeah, I'm asking you, I want your answer, just let me get the question out. What I'm trying to ask you is, does it matter whether they were under a misimpression? If they get a court order saying you're to withhold this money, rather than say we don't provide this service, shouldn't they either come in on a declaratory judgment action and say, you know, tell us what our rights are, or do something rather than just say we're not going to comply? Well, that's, your analysis is also correct, but that issue, what you say also goes to the 216-9 issue, where he decided it's solely affidavits, and I, this morning, I picked up that one sentence that the judge said in the transcript about how would they know? Well, how would they know? But there were, at a minimum, he should have denied the motion to dismiss, required them to answer, and go to a fact hearing, because, basically, there may have been other facts which would have showed that Blue Cross and Blue Shield had knowledge of the fact that Dr. Vaughan was a sole proprietorship. They're paying it, they're actually doing the insured a favor. They should be sending, as you know, they're supposed to be sending the checks to the insured, who then is supposed to send it to the doctor. And when you go to the doctor's office and say, would you want us to send it to the doctor directly, and you sign yes. That's why it's being sent to the doctor. It's really not the doctor's money. It's the insured's money. The relationship between the insurance company is with the patient, not with the doctor. The insurance company says, you give me a premium, I will pay you so you can pay your doctor. And the doctor says, you know, he says, do you want us to send this bill directly to your insurance company so you don't have to do this? Yeah. This money is, the relationship is between the insurance company and the insured. The doctor doesn't have a relationship with the insurance company. How, what relationship does this doctor have contractually or otherwise with the insurance company? Because he's one of the preferred providers who they say the patient must go to in order to be paid. Okay. And that we all. I'm with you. But who, who is, who is in contract with the insurance company? The doctor? The doctor doesn't. The doctor is providing a service to the patient. And the patient is paying the premium to the insurance company. And the money the insurance company gets is supposed to go to the patient to pay the doctor. But they send it to the doctor just to be nice to their insurance because they give them all the paperwork. Well, let me ask you a question because maybe, maybe there's some confusion here. Maybe this might be why 2619A9 might, might not be the right vehicle. Wasn't this reimbursement of income to the doctor? Wasn't this stuff that, you know, he, he'd rendered services. That's right. And then he's getting paid for his services. That's exactly right. Isn't, I mean, he's not, he doesn't have to sit down there and write out a check to, to each patient, correct? Isn't this money that he earned by treating people? That's exactly right. It's money that he earned by treating people. And we go back to. So it's income to him to pay him, Blue Cross is paying him for people he's already treated and taken care of. Well. And, and he's, and they've sent bills out and then they pay him back. What, what, yeah. So the, the, the service that's being rendered, if, if, if. But who would you sue for the bill? You wouldn't sue the insurance company. You'd sue the patient. Who is primarily responsible for that? The patient. The patient is in contractual relationship with the doctor. The patient's in contractual relationship with the insurance company. But that's, I think, maybe I'm missing something. And I'm glad we're having this discussion. But here's the thing. I was, I understood, and maybe both of you can explain it to us, that I understood that these were checks that were coming back to the doctor where he was getting, you know, where someone had said, pay the doctor. So it's his fee, basically, for having treated people. And it's his money. He doesn't have to give it to anybody else other than his wife for the child support. That's the only other claim on the money, right? Well. Or am I wrong? Tell me if I'm wrong. I would like to answer that question in two parts. Sure. The thing you have to decide is, under these factual circumstances, is it income as defined in the statute? And we have nothing to look for to accept the words of the statute. Let me ask a question. One thing that the appellee points out is that Dr. Vaughn wasn't providing the service, that Vaughn chiropractic. Does that make a difference? Or are you saying they're one and the same? There's a one-word answer. No. There's no legal entity named Vaughn Center, correct? That's right. It's just Dr. Vaughn. He's a sole proprietor. That's right. He's not incorporated. But he does business under this name? Yeah, it's a business name. The DBA? That's all. Yeah, doing business as. Has he filed to do business under that name? No, if you take a look at the documents that were produced in connection with the 219 motion to dismiss, you'll see that he picks up the income on a Schedule C. Well, he said he's submitted an affidavit saying, I'm a sole proprietor. Yeah, and I got something to say. So he's not disputing it. He's saying, because as I understand it, and you can tell me because you're an authority in divorce law, but I understand it that he. Thank you. Well, you are. And it's well known. What, as I understand what he's saying is that this is a service that's actually, it helps him because the checks go to Blue Cross. They write the check that's, they cut the check for his wife and send it to the state, and the state then sends it on. It's actually a state service, isn't it, that's being provided. So it's actually to his benefit. He wants it to be done so then he doesn't have to write the checks in case he forgets or in case there's some dispute. He just, the checks go directly to his wife through Blue Cross to the state to his wife. I'm going to suggest a what if scenario. What if she had a money judgment and she filed a garnishment against Blue Cross and Blue Shield? Could they take the position that it, they don't owe it to a doctor, at least. They don't provide that service. Yeah. They can't do that. Yeah, they can't do that. And this is no different than basically a continuing garnishment, basically. If you look at the mechanics of it. Anything else? Well, I think we've just, just inadvertently, we discussed the 209, the 2619, 2619. And we also discussed the question whether there has to be willful compliance. Oh, one interesting point they said in their argument is that it doesn't become income until he puts it on his schedule C. Well, you know, it becomes, it's income under the definition, but it is income, as your honor said, when he takes it out of the bank account and spends it for other purposes other than child support. Thank you. I would ask that the judgment be reversed, or at a minimum, we set it back for factoring on the 2619 motion. Thank you. Thank you. We need your help here. You're the expert on insurance. I am going to provide it, because what I heard is very disturbing. Blue Cross Blue Shield, as your honor O'Brien pointed out, provides insurance to Illinois residents. And when the residents receive health medical services from a doctor, they instruct often their insurance company to pay on their behalf. If we did not pay on their behalf when we're required to do so, they would sue us. Right. They would sue us, because we have no ability to not pay their medical bills to the extent they're covered by our policy, unless we have a legal obligation not to pay and a legal duty not to pay. The Illinois Income Withholding for Support Act does not put that duty on us with respect to a provider for very, very simple reasons that follow from ordinary principles of statutory construction. And I'm just going to go through those, because they are so important in this case, your honor. The first is that meaning is determined from the words of the statute. The second, in the absence of any ambiguity in the statute, you go by the expressed meaning of the words. Words are to be given their plain and ordinary meaning. We know all that. Let me stop you. Let me stop you, counsel. Let me stop you. Justice O'Brien makes an excellent point. The money that Blue Cross is sending to Dr. Vaughn, okay. It does not send money to Dr. Vaughn. It's payee by all the documents and all the evidence before the trial court go to Vaughn's center. What is Vaughn's center? Vaughn's center is the DBA, the sole proprietorship pursuant to which Dr. Vaughn does business. That's irrelevant. But it's not irrelevant because it's not a legal entity, so it's still going to Dr. Vaughn. He's the recipient. Who cashes the checks? Dr. Vaughn. Dr. Vaughn may cash the checks, but the statutory language, and that's why I think it's so important to keep coming back to the statute, turns on not who cashes a check. It turns on who the payee on the check is. But if the payee is a non-existent entity and the real life recipient is the doctor, then he's the one that you're paying. You're still paying Vaughn's center. It doesn't matter what happens. Vaughn's center doesn't exist. Then you're paying a cipher. You're paying something that doesn't exist. Well, let me put it this way, Your Honor. Legally, it does not exist. The statute obliges. Or is it a question of fact? Is it something that maybe this isn't a statute 619? The question of fact that is involved in this case, because there is one, is who is the payee? Right. That question was answered by the trial court based on unrebutted evidence, even Dr. Vaughn's affidavit, that the payee is Vaughn's center. What Dr. Vaughn says in his affidavit is that after Blue Cross Blue Shield Illinois pays Vaughn's center, I take that money as income. Okay. It's afterwards. And it's important to remember that the statute talks in terms of a payor, and it's defined, who pays income, and it's defined, to an obligor, and it's defined. The obligor is only the person identified as obligor in the relevant support order. You look at the support order here, the relevant obligor is Dr. Vaughn, not Vaughn's center. So there's no duty under the statute for a third party like Blue Cross who gets in a support order and a notice to withhold, and that support order and notice to withhold say your obligor is Dr. Vaughn. What do they do? They check their records. They see if they make any checks out to Dr. Vaughn. If they don't, they don't pay any money to the obligor. Another reason you have to understand this statute in the broader context of all the statutes on this area is because we're talking about individuals. The obligor who is an individual is a natural person. Why? Because it's a parent that has defaulted on child support obligations. The obligor is a natural person. So that obligor definition in the statute which talks about the individual natural person identified in the support order, individual as used in the definition of income also means a natural person for two very simple reasons. Number one, individual is a natural person by ordinary definitions, and individual isn't defined in the statute. The statutory definition of income uses the word individual. Individual by regular, plain, ordinary meaning means a natural person. Individual means a natural person by the case law cited in our brief. And more significantly than that, the definition of income in the statute uses the word individual. It also uses the word person. They try to say that person means a non-natural person. This is all in your brief. Let me just ask you something else, something beyond the brief. What Justice O'Brien was saying was the money that's being sent, the reimbursements, OK, sent from Blue Cross to Dr. Vaughn or Vaughn Center, have it your way, Vaughn Center, the payee, what is it for? Isn't it, that's income to him. Do you disagree with that? Or is that money that he then has to take that and write checks to each of his patients and reimburse them? I'll answer it this way, Your Honor. What it is, is Blue Cross fulfilling its obligations to its insurers to pay expenses that they incur. If Blue Cross didn't fulfill that obligation to its insurers to pay money for covered services they receive, they would sue them. What does Blue Cross contemplate when you send checks to Dr. Vaughn or Vaughn Center? Is it contemplate that those are then going to be cut up and sent back to patients? Or is that compensation to him for services rendered to your insurers? It's compensation for covered services rendered to their insurers. But he doesn't then sit down and write checks to the patients. He doesn't do that. That would be your question. The only thing the doctor would ever do would be write a bill to the patient. So that's income to him. It's income to him, but we don't pay in order to give him income. The individual. You're paying, I know what you're saying. You're saying we're complying with our obligations under our policies. And if we don't, we need a statute that allows us not to. Pardon me, I'm sorry. And if we don't comply with those obligations, we need. Exactly. And you're violating your policies because you owe coverage to people. That's right. You're reimbursing him for services he's previously rendered, chiropractic services to people who are insured under your policies, period. That's right. And if we were paying money to an individual, then the statute might apply. So we don't fall within the definition of income. Dr. Vaughn is the obligor, and we make payments out indisputably on the factual record in the lower court to Vaughn's center. Let me ask you this. I understand your syllogism. It's a very logical syllogism. But put in there, insert in there, if Vaughn's center does not exist as a legal entity, then the payee, in fact, is Dr. Vaughn. Is it not? If Vaughn's center, if you want to take it out of the picture, yes. But it's not out of the picture. If he was the payee, we'd do it, and we'd abide by the order. You'd abide by this order, wouldn't you? Right. Withholding order. If he was the obligor. The obligor. And the payee. And the payee. He is the obligor, and we all agree on that. Right. And the payee. But if he was the payee as well. So when he says in his affidavit, I am the payee, because Vaughn's center doesn't exist. He didn't say that in his affidavit. He says I'm the sole proprietor. There is no Vaughn's center other than a name I made up. And it sounds nice on business cards. But he recognizes that even he in his affidavit structured it very carefully. He doesn't say, Blue Cross Blue Shield Illinois pays me money. He says, I take the money, Blue Cross pays Vaughn's center, and claim it as income. He has to say that, because he can't say he's the payee. So then there is no, but he is. I guess we're really on a semantic dog chasing its tail thing here. But if he is, in fact, the payee, and he is, in fact, the payee. You don't have to speak to that. You're standing on the technicality. We pay Vaughn's center. So he's not the payee. Vaughn's center is paid. But Vaughn's center doesn't exist. There isn't such thing as Vaughn's center. I'm not standing on a technicality, Your Honor, because people are allowed to do business under assumed names and as sole proprietors. Did he file an assumed name certificate? I mean, if you know. I don't know. All I know is the agreement between him and Blue Cross, as set forth in the documents in the record, are between Vaughn's center and Blue Cross. He was doing business as Vaughn's center. And the statute, the withholding statute, doesn't require a person in Blue Cross Blue Shield's position to go beyond what is in their records, which is that we do business with Vaughn's center and figure out if, even though we do business with Vaughn's center, can we decide that? But counsel, when they brought you to court and said, look, Vaughn's center is my business name. There is no corporation. There's nothing behind it except me. I'm a sole proprietor. Then your records were paid to be altered, because you knew then, at that moment, your knowledge changed, that now you've got an individual. You've got a person that is the payee. And why can't you then say, oh, like you just said a few months ago, if we knew he was a payee, if we looked in our records and saw payee Dr. Vaughn, we'd comply with the order. Well, they're telling you. And he told you, there is no Vaughn's center. I'm the payee. Why won't you change your records? Why won't you then say, why are you standing there and saying, because our records used to say this. They shouldn't anymore, because he is a payee. I think we're getting a little sidetracked here, Your Honor. We're not saying that we would change our records. We do business with Vaughn Center. We say the statute. It doesn't exist. We are permitted to do business with Vaughn Center. But now you know there is no Vaughn Center. No, we know that it's a sole proprietorship. We know that it's a sole proprietorship. We know that it's a sole proprietorship. What is? Vaughn Center. Owned by Dr. Vaughn. He is the sole proprietor. He is the human being behind it. Exactly. OK, so now that you know that, you come into court and they tell you that. And you say, you don't understand. Our records still say Vaughn Center. But they're saying, but don't you understand, the reality is it's Vaughn himself. So why don't you say, OK, then we'll comply with the order? Because the statute controls. And the statute defines the payee as the person to whom you pay income. Our checks then and our checks now go to Vaughn Center. And as a factual matter, the trial court found that our payee is, was, and continues to be Vaughn Center. And that factual finding, based on the records, the documents that say we have a relationship with Vaughn Center and pay him, are controlling. And in light of the time that I'm being I'd like to move on to the What if he gave you an indemnity agreement? Dr. Vaughn said, you go ahead and comply with this order and I'll indemnify you for any damages that are going to result. If he gave us an indemnity and a hold harmless and covered every single cost that we would incur from all of our insureds, you know, I don't know how many patients. It's not all insureds. It's him. No, no, I understand. I said, I don't know how many of our insureds that he provides service to. What if it's 100? We don't want to look at 100 lawsuits. It's not our responsibility to have to do this. So you can opt out of the statute. No, not at all. Not at all. If the statute applies, we follow it. The statute doesn't apply, which is another reason. Are there other instances where Blue Cross has complied with the same order for other people? Yes, because it has a lot of different names. It would say, you know, Joe Smith is a payee. Joe Smith is the obligor. You'd say, fine, no problem. And we do. You do. And we do. So it's not onerous to you. I mean, if you have the right person, it's not onerous. It's because the employees that we pay, and typically, and in all the cases cited, it is an employer-employee situation. It's like constance of the garnishment, right? Not exactly, because it's a different statute with different definitions. But we don't need to make an analogy, because we have to go by the words of this statute. And it doesn't apply in our case, which is another reason why it makes any deviation, if you could even call it that, and I don't think you fairly can do so, a not annoying violation. The trial court found, as a matter of fact, who our payee is. The statutory definitions, as a matter of de novo review of the statutory language, don't apply. And the court had the ability and discretion to impose penalties if he found some violation he did, and then he didn't abuse his discretion by not. I think he has to impose a penalty, doesn't he? Isn't it mandatory, I think? The one case that suggests that it's mandatory also says there may be a factual situation where an actual violation doesn't result in penalties, but this isn't one of them, so we won't bother to decide. I'm sorry, but what you're saying is this is a situation where Dr. Vaughn created a situation. He can undo it, or he can do whatever he wants. But you're going to continue to do what you have been told to do by him. He did absolutely create the situation. I don't know why, but it was long before we got the notice. So it wasn't, I don't think, just to evade. And there won't be the broad-scale evasion that they suggest, because it's not like an employee can just go in and tell an employer willy-nilly, I'm going to do business under a different name to avoid. So that's just silly. And it just doesn't apply in our case. You made it very clear that Blue Cross Blue Shield considers Vaughn's center to be the payee. If the support order had indicated that the obligor was Dr. Vaughn or Vaughn's center, would you pay the support? If the obligor was Dr. Vaughn, we would. Or Vaughn's center. We wouldn't be paying in that situation because it said, or Vaughn's center. We'd be paying in that situation because it said Dr. Vaughn. Oh, well, Vaughn's center is where you said Dr. Vaughn. I was thinking of, other way around, yeah. Exactly. So if it said Vaughn's center, you'd pay. Yeah, but it can't say Vaughn's center, because Vaughn's center is not an obligor. An obligor is defined as the individual that's providing the support. No, I'm simply saying if the order clarified. If the order for support said Vaughn's center, yes. OK, or Dr. Vaughn or Dr. Vaughn doing business as Vaughn's center, you'd pay. In that situation, probably also. Because we do do business with Vaughn's center. So as long as we have some ability to say, hey, insured, we know we're supposed to pay your covered expenses, but we're not going to. Because this order says, when we pay money to Vaughn's center for services that you receive, we don't have to pay Vaughn's center. We have to divert it. If we divert it without that protection, we expose ourself. And the onerous nature of the penalties in this statute, which has been recognized by the court, do not get imposed unless it applies on all fours with the facts before you. Anything else? No, Your Honor. Thank you. Any rebuttal? Just three sentences. One, I think all three of the court and the two of us are ignoring one essential fact. Blue Cross and Blue Shield didn't write a check. This was a wire transfer into an account that the doctor set up. They had no way of knowing how that count was designated. Secondly, once they found out that Dr. Vaughn was What does the account say? What's the name on the account? I don't know. It says Dr. Vaughn. I don't know. I didn't look at that, but it's in either the memorandum of law or the affidavit. It says Dr. Vaughn doing business at Vaughn's center. Then there's no dispute. Yeah. I don't know. I should have looked at that, but that was in one of the exhibits. And I don't have the record. The other thing is once they found out he was a sole proprietorship, from that point on, I think it's willful. It's not excusable or innocent. And last but not least, when the statute says payer, it refers you directly to income and income. That gives you the whole chain of definitions. Thank you very much. We'll take the case under advisement. We're adjourned.